UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK L. WILLIAMS,

             Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,[1]

             Defendant.

_____

18-cv-00398-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. Dkt. No. 16.

Plaintiff Mark Leroy Williams ("Plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 12) is granted as to remand and Defendant's motion (Dkt. No. 14) is denied in its entirety.

## BACKGROUND

On July 23, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 11, 2014. Tr. 10.[2] Social Security initially denied Plaintiff's disability benefits application on October 23, 2014. Tr.

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case. In this case, the entire transcript is located at Dkt. No. 9.

94. Plaintiff sought review of the determination on November 4, 2014. Tr. 103. A hearing was held before Administrative Law Judge ("ALJ") Lynnette Gohr on December 1, 2016. Tr. 26; 4B, 5B. ALJ Gohr heard testimony from plaintiff, who was represented by counsel, as well as from Courtney Quinn, an impartial vocational expert. Tr. 26-57. On January 12, 2017, the ALJ issued a decision that Plaintiff was not disabled under the Act.. Tr. 10-22. Plaintiff's timely sought review of the decision by the Appeals Council. Tr. 104-107. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 31, 2018. Tr. 1-6. The ALJ's January 12, 2017 denial of benefits then became the Commissioner's final determination. Plaintiff filed this action on March 30, 2018. Dkt. No. 1.

Born on February 26, 1972, Plaintiff was 42 years old on the alleged disability onset date and 44 years old on the date of the hearing. Tr. 148. Plaintiff is categorized as a "younger person" as defined by the agency's regulations during the period relevant to this appeal.[3] Tr. 148. Plaintiff is able to communicate in English, has a high school education, and previously worked in several jobs including as a solider in the U.S. Army, as a security guard and on a farm. Tr. at 173.

Plaintiff requests that the Court determine whether the Commissioner's decision that Plaintiff was not under a disability is supported by substantial evidence and not based on errors of law. Dkt. No. 12-1 at 2.

---

[3] "If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(c).

2

# DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) *quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) *quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

5

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ first found that plaintiff last met the insured status requirements of the Act on September 30, 2017. (Tr. 10, 12) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since June 11, 2014 through September 30, 2017, the date last insured. Tr. 12. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder and anxiety disorder. Tr. 12. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).. (Tr. 13-

14). Before proceeding to step four, the ALJ assessed plaintiff's RFC through the date last insured as follows:

> [T]he [Plaintiff] has the residual functional capacity to preform a full range of work at all exertional levels but with the following nonexertional limitations: can tolerate minimal changes in work routines and processes; is limited to performing simple, routine tasks and making simple work-related decisions; cannot work in a job with strict production quotas, can tolerate only occasional interaction with supervisors and coworkers and incidental interaction with the public; and cannot work in tandem or on a team.

Tr. 14-21.

Proceeding to step four, the ALJ concluded, based upon the testimony of Vocational Expert ("VE") Benton, that Plaintiff was unable to perform any past relevant work through the date last insured. Tr. 21. Proceeding to step five, and after considering testimony from VE Benton in addition to plaintiff's age, work experience and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as a housekeeper, cleaner, and landscaper. Tr. 22. Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from June 11, 2014, the alleged onset date, through January 12, 2017. Id.

IV. *Analysis*

Plaintiff's primary claim for benefits "centers on his ability to deal with people and the stress this causes him" Tr. 21. Plaintiff contends that he is disabled from working because of depressive disorder and anxiety disorder. Tr. 29. He testified at the hearing that he stopped working because he experienced depression, anxiety, and because whenever gets around a lot of people, he gets agitated and hyperventilates. Tr. 34.

7

Dr. John Conboy of the Buffalo Veterans Administration Medical Center ("VAMC") served as Plaintiff's treating physician. Dkt. Nos. 12-1 at 11; 14-1 at 11. He filed two reports on the Plaintiff's capacity to mentally function in an employment situation: the March 31, 2015 report ("March 2015 Report") and the May 10, 2016 report ("May 2016 Report"). Ex. 10F. Plaintiff argues that the ALJ erred by discounting part of the May 2016 Report. Plaintiff contends that his ability to shop for groceries, go to a soup kitchen, take public transportation, and attend a single holiday party does not mean that he was functioning at a higher mental capacity than opined by Dr. Conboy or retained the ability to handle the mental demands of competitive full-time work on a sustained basis. Dkt. 12-1 at 14-15. For the reasons described below, the Court finds that the ALJ committed legal error by not properly applying the treating physician rule in evaluating the May 10, 2016 opinion of Dr. Conboy.

On March 31, 2015, Dr. Conboy completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination. Tr. 651-652. He listed Plaintiff's medical conditions as major depression and substance abuse. Tr. 651. Dr. Conboy noted that Plaintiff's prognosis was fairly good if Plaintiff compled with medications and appointments, and treatment included Trazadone and Sertraline. *Id.* He indicated Plaintiff's condition was permanent but noted his symptoms may improve significantly. *Id.* He opined Plaintiff's ability to interact with others was moderately limited. Tr. 652. He explained Plaintiff's depressed mood fluctuated but he could not speak to limitations in Plaintiff's ability to work because he had never tested Plaintiff for it. Tr. 652. He recommended "job training perhaps." (Tr. 652).

On May 10, 2016, Dr. Conboy completed another Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination for the Plaintiff. (Tr. 649-650). He listed Plaintiff's medical conditions as obstructive sleep apnea, hypertension, and major depression. (Tr. 649). Treatment included Amlodipine, Hydrochlorothiazide, Lorazepam, and Sertraline. (Tr. 649). Dr. Conboy indicated Plaintiff's major depression was permanent but varied in intensity. (Tr. 649). He opined Plaintiff was very limited in his ability to interact appropriately with others, maintain socially appropriate behavior without exhibiting behavior extremes, and appear able to function in a work setting at a consistent pace. (Tr. 650). He also opined Plaintiff was moderately limited with maintaining attention/concentration. (Tr. 650). He further opined "high stress positions would not be tolerated." (Tr. 650). In response to the question "does this individual have severe impairment(s) which has lasted, or is expected to last at least 12 months," he answered, "difficulty interacting with others but isolation (no activity) not likely to help either." (Tr. 650).

The ALJ devotes five paragraphs to outlining the evidence against Plaintiff's claim of social anxiety, some of which the ALJ also cites directly and indirectly in her decision to give little weight to the last part of Dr. Conboy's May 2016 opinion. The ALJ stated:

> First, the most significant problem alleged by the claimant concerns his ability to deal with people and the stress this causes him. In that regard, the claimant described himself as a socially awkward, anti-social, loner essentially without friends who has not had a girlfriend at any time since his alleged onset date. However, his medical records document that in December 2015 he was planning to attend a holiday party (Exhibit 5F, p. 7), on January 28, 2016, he reported losing two girlfriends since his previous appointment (Exhibit 9F, p. 5), in April 2016 he sought evaluation for a possible sexually transmitted disease (Exhibit 11F, p. 9), and in the fall of 2016 he invited two acquaintances to his apartment to watch football (Exhibit 13F, p. 8). The claimant also admitted that he goes to a soup kitchen daily, uses public transportation, and goes grocery shopping, albeit at an early hour to avoid larger crowds (Exhibit 3E and hearing testimony). Finally, the

9

claimant testified that he uses Facebook, and talks to his daughter once or twice a month on the phone or over the internet. All of this is evidence of a greater capacity for social interaction than generally acknowledged by the claimant.

Second, independent of limitations in his social functioning, the claimant's admitted daily activities are inconsistent with his alleged inability to function in a work setting. This includes his part-time work at the [Buffalo Veteran's Medical Center ("VAMC")] that he quit, personal care tasks, cooking, washing dishes, keeping his living area clean, and hand-washing his clothes (Exhibit 3E, and hearing testimony).

Third the claimant's apparent effort to minimize some of his activities by outright denying they occurred is inconsistent with the record. Most notably, this includes his assertion that he does not take walks other than to his appointments, the grocery store or the soup kitchen, and that he did not travel to Arkansas for his mother's funeral. His medical records include several references to his taking walks with no reported purposeful destination. This includes the May 7, 2015, note when he reported having "spent the weekend walking around his neighborhood" (Exhibit 6F, p. 19), the December 15, 2015, note indicating he was "attempting to take walks on a daily basis" (Exhibit 8F, p. 7), and the September 19, 2016, note that he had "been doing a lot of walking for exercise" (Exhibit 13F, p. 10). Similarly, the claimant's testimony that he did not travel to Arkansas is directly contradicted by the July 25, 2016, treatment note that he lacked funds for food after "having to pay for a recent trip home" (Exhibit 12F, p. 3).

Fourth, the minimal and sometimes entirely benign findings reported on mental status examination by Dr. Conboy and social workers, as reviewed above, is inconsistent with the claimant's allegations concerning the severity of his symptoms. This includes the allegation that his personal hygiene and grooming are lax because he is so socially withdrawn (Exhibit 3E). In fact, the claimant is consistently described as well- groomed with good hygiene (Exhibit 2F, p. 11, Exhibit 4F, p. 40, Exhibit 7F, p. 11, Exhibit SF, p. 7, Exhibit 12F, p. 8, and Exhibit 13F, pp. 2, 8 and 11). While the claimant is sometimes noted to have a disturbance in mood with commensurate affect, he often had no other positive findings (see, e.g., Exhibit 2F, p. 11), sometimes had entirely benign findings (see, e.g., Exhibit SF, p. 7, and Exhibit 13F, p. 2), and several times acknowledged that he was in good spirits without acute mental health concerns (see, e.g., Exhibit 6F, p. 19, Exhibit SF, p. 7, and Exhibit 13F, p. 10).

Finally, the claimant's allegation of an inability to work due to disability is inconsistent with his statement to a VAMC employment coordinator in November 2014, some five months after his alleged onset date. On that occasion, the claimant reiterated his interest in finding employment but stipulated that the resulting "income must be 'significantly' greater than his non service related pension" (Exhibit 3F, p. 70).

Tr at 19-20.

With respect to the May 2016 report, the ALJ concluded "I give significant weight to Dr. Conboy's opinion as to the claimant's moderate limitation maintaining attention/concentration and inability to tolerate stress as these assessments are consistent with the record. Accordingly, his opinion serves as a basis for those limitations in the residual functional capacity determined above." Tr. 21. However, the ALJ then stated,

> I give little weight to the remainder of Dr. Conboy's May 20, 2016,[4] (sic) opinion as it is not consistent with the record, including his prior opinion after which there is evidence of a significant change in the claimant's condition. Further, the remainder of his opinion is not consistent with references in the record to the claimant grocery shopping, going to a soup kitchen, taking public transportation, and attending a holiday party (Exhibit 3E, Exhibit 8F, p.7, and hearing testimony).

Tr. 21.

The treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Social Security Regulations require the Commissioner to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32; *quoting* 20 C.F.R. §404.1527(c)(2). Indeed, the reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, 6:15-cv-0643, 2016 WL 3514126, *6 (W.D.N.Y. June 28, 2016); *accord Blake v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

---

[4] The date of the report is actually May 10, 2016.

11

When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." 20 C.F.R. §404.1527(c)(2). "When other substantial evidence in the record conflicts with the treating physician's opinion...that opinion will not be deemed controlling...[a]nd the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *accord* 20 C.F.R. §404.1527(c)(4).

Furthermore, "legal error is cause for remand, even if substantial evidence exists to support the Commissioner's factual findings." *Jones v. Barnhart*, No. 02-CV-791 (SHS), 2003 U.S. Dist. LEXIS 3391, 2003 WL 941722, at *12 (S.D.N.Y. Mar. 7, 2003)" *Oomen v. Berryhill*, 2017 U.S. Dist. LEXIS 58319, at *36 (S.D.N.Y. Apr. 17, 2017) "Although an ALJ's compliance with the treating physician rule may not compel a particular 'semantic formula,' 'the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion' and the 'failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' (internal quotation marks omitted)." *Id.* quoting *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The ALJ chose to give little weight to part of the May 2016 Report. To support this decision, she cites several examples of Plaintiff's social activities in the opinion but fails to provide any explanation as to how or why they contradict the treating physician's

opinion as required under *Greek*. This lack of explanation is particularly concerning in this case where most, if not all, of the examples cited by the ALJ qualify as "activities of daily living." *Falbru v. Berryhill*, 2018 U.S. Dist. LEXIS 54598, at *7-8 (W.D.N.Y. Mar. 30, 2018) citing *Knighton v. Astrue*, 861 F. Supp. 2d 59, 69 (N.D.N.Y. 2012). These activities include, but are not limited to, Plaintiff's two short-term relationships, grocery shopping, going to a soup kitchen daily for a meal, taking public transportation, grooming, speaking with a child via social media once or twice a month, and walking.

Courts in this circuit are clear that these types of activities, by themselves, are not enough to "contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Id.* If the ALJ intends to rely upon them, more explanation is required to show how these activities are demonstrative of how Plaintiff would function in an employment situation. *See Harsh v. Colvin*, 2014 U.S. Dist. LEXIS 116855, at *11-12 (N.D.N.Y. Aug. 21, 2014) ("Under the circumstances and given the medical opinions of record, it was error for the ALJ to infer an ability to handle the stress demands of competitive, remunerative employment on a sustained basis from the ability to perform very basic activities of daily living"). Additional analysis is also critical because many of these activities do not require a social component to complete successfully.

As noted above, activities of daily living cannot, by themselves, serve as substantial evidence for the purpose of giving little weight to a treating physician's opinion. Additional evidence is required. The ALJ also cites Plaintiff's attendance at a holiday party and inviting two friends over for a football game one Saturday afternoon in support of her decision. To the extent these do not qualify as activities of daily living, the ALJ does not

13

explain how these two isolated, one-off activities contradict Dr. Conboy's opinion or serve as an indicator of how Plaintiff would respond in an employment situation.

The Commissioner appropriately notes several discrepancies between the Plaintiff's assertions and testimony and other parts of the record. Dkt. 14-1 at 10. The ALJ is within her right to make determinations about credibility. *Carroll.*, 705 F.2d at 642. However, these determinations, while important, do not cure the lack of analysis discussed above.

This, in the Court's opinion, constitutes legal error. Even if it did not constitute legal error, the ALJ did not provide substantial evidence to justify giving little weight to part of Dr. Conboy's May 2016 Report. Under either scenario, remand is appropriate. Remand will give the ALJ the opportunity to either provide additional explanation or to develop a better record to explain how these activities negate Dr. Conboy's May 2016 Report.

## CONCLUSION

For the foregoing reasons, Plaintiff Mark L. Williams's motion for judgment on the pleadings (Dkt. No. 12) is granted, Defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 14) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:    October 30, 2019
             Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge